**TERRY M. PLANT, #2610**
**JOHN H. ROMNEY, #9160**
**PLANT, CHRISTENSEN & KANELL**
Attorneys for Defendant City of South Salt Lake
136 East South Temple, Suite 1700
Salt Lake City, Utah 84111
Telephone: (801) 363-7611

---

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

---

| | | |
|---|---|---|
| ERIN V. NIELSON, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR SUMMARY** |
| Plaintiff, | ) | **JUDGMENT** |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF SOUTH SALT LAKE and | ) | |
| OFFICER GARY JASON BURNHAM, | ) | |
| | ) | Civil No: 2:06-cv-335 |
| Defendants | ) | |
| | | Judge Dale A. Kimball |

---

COMES NOW the defendant, The City of South Salt Lake, by and through its counsel of record, Terry M. Plant, and submits its Memorandum in Support of Motion for Summary Judgment.

### INTRODUCTION

Plaintiff's complaint alleges that defendant Gary Burnham ("Burnham") sexually assaulted her while he was employed as a police officer for defendant The City of South Salt Lake ("South Salt Lake"). brought an action based upon an alleged sexual assault committed by Defendant, Gary Burnham (hereafter "Burnham"). Plaintiff alleges that South Salt Lake failed to "instruct, supervise, control and/or discipline Officer Burnham." (Complaint pars. 34, 46). Specifically, Plaintiff alleges, under 42 U.S.C. § 1983, that South Salt Lake violated the

Plaintiff's due process rights, and safeguards protecting her against cruel and unusual punishment, unreasonable searches and seizures, and slavery. South Salt Lake's Motion for Summary Judgment warrants the dismissal of the Plaintiff's claims against South Salt Lake.

The material facts are undisputed. On July 2, 2005, at 2:47 a.m., then Officer Burnham cited the Plaintiff for alcohol related offenses. He then transported the Plaintiff to his own apartment in his police car. After arriving at his apartment, Burnham checked off-duty by telephone at about 3:40 a.m. with his South Salt Lake supervisor. Nobody at South Salt Lake knew that Burnham either transported the Plaintiff in his police car or that he took her to his apartment. While at his apartment, Burnham and the Plaintiff had sexual contact, the consensual nature of which is disputed by Burnham and the Plaintiff, but not material to this summary judgment.

At approximately 6:45 a.m., Burnham transported the Plaintiff to a gas station near her parents' home. Later that day (still July 2, 2005), Plaintiff reported having been sexually assault by Burnham. Immediately upon receiving notice of the alleged sexual assault on July 2, 2005, South Salt Lake placed Burnham on administrative leave pending an investigation. Burnham never worked for South Salt Lake again. South Salt Lake commenced an internal affairs investigation, and the Salt Lake County District Attorney conducted its own investigation. Burnham initially denied any sexual contact; however after later failing a polygraph test, Burnham admitted to consensual sexual contact with Plaintiff on July 2, 2005. Burnham resigned prior to the completion of the investigations. The South Salt Lake investigation concluded that regardless of the consensual or non-consensual nature of the sexual contact, Burnham committed several violations of South Salt Lake's police policies and rules.

Plaintiff bases her claims against South Salt Lake on the allegation that South Salt Lake somehow knew, or had reason to know, that Burnham would sexually assault her.

Burnham had been employed as a police officer by Tremonton City from 1997-1999. Burnham was a police officer in good standing with Tremonton City when he was subsequently hired by South Salt Lake. As a precondition to employment with South Salt Lake, Burnham was required to undergo a several month long screening process. The screening process included a Suitability Assessment, criminal background checks, drug screens, and interviews with former employers, neighbors and ecclesiastical leaders. No evidence was found to disqualify Burnham for employment with South Salt Lake.

While employed with South Salt Lake, Burnham's job performance warranted the bestowal of the Medal of Merit and 10 commendations. Burnham's only reprimands related to missed court and hearing appearances, and speeding. Burnham received six unsubstantiated complaints, three of which Plaintiff contends should have been sufficient to provide notice that Burnham was a danger to Plaintiff. The first of the complaints Plaintiff relies upon was a complaint alleging excessive force. The complaint was throughly investigated and no evidence was found to substantiate the complaint. In fact, the person against whom the excessive force was allegedly used did not even make the complaint. The second of the three complaints relied upon by Plaintiff was made in December 2002. Burnham's first wife filed a complaint against him during the course of their divorce. The allegations of the wife's complaint were investigated by several government agencies, including South Salt Lake. No evidence was found to substantiate the allegations of the complaint. The third of the three complaint relied upon by Plaintiff was made in December 2003 by Burnham's second wife. She was intoxicated when she filed the complaint and her allegations were found to be inconsistent. Burnham entered a plea in

abeyance, attended counseling, and had the matter dismissed with prejudice. South Salt Lake referred the matter to POST (Police Officer Standards Training) for investigation, which issued a letter of warning to Burnham.

South Salt Lake's policies and procedures were well known to Burnham. Burnham received training and policy manuals regarding proper conduct as a police officer. Burnham knew it was improper to transport Plaintiff in his police car without permission. Burnham knew it was improper to take Plaintiff to his apartment. Burnham knew he was still on-duty when he transported Plaintiff to his apartment in his police car. Burnham knew that Plaintiff had a blood alcohol level of .194 shortly before he took the Plaintiff to his apartment. Burnham knew that an intoxicated person could not consent to sexual contact. Burnham knew that by acting as he did, he could lose his job. Burnham knowingly committed several violations of South Salt Lake's policies and rules.

Based upon these undisputed material facts, Plaintiff's claims against South Salt Lake cannot stand and summary judgment in favor of South Salt Lake is warranted and appropriate.

## UNDISPUTED FACTS

1.  Defendant, South Salt Lake, is an incorporated city of the State of Utah. (Complaint, ¶2).

2.  Defendant, Burnham was an employee of the South Salt Lake Police Department. (Complaint, ¶3).

3.  Plaintiff alleges that South Salt Lake failed to "instruct, supervise, control and/or discipline Officer Burnham." (Complaint, ¶34, 46).

**Burnham's Background**

4.      Burnham was employed as a police officer by the Tremonton Police Department from 1997 to 1999.  (South Salt Lake Personal History Statement, pg. 12, attached as Exhibit 1; Deposition of Gary Burnham, 59:10-13, attached as Exhibit 2).

5.      In April 1999, at age 26, Burnham applied for a police officer position with South Salt Lake. (South Salt Lake Personal History Statement, attached as Exhibit 1).

6.      In his application for employment with South Salt Lake, Burnham represented that he had been continuously employed from the age of 16, with the exception of two years when he served as a missionary for the Church of Jesus Christ of Latter Day Saints. (South Salt Lake Personal History Statement, pgs. 12-14, attached as Exhibit 1).

7.      In his application for employment with South Salt Lake, Burnham denied any adult criminal history.  (South Salt Lake Personal History Statement, pg. 20, attached as Exhibit 1).

8.      In his application for employment with South Salt Lake, Burnham denied any history of alcohol or drug use.  (South Salt Lake Personal History Statement, pg. 20, attached as Exhibit 1).

9.      Burnham was POST (Police Officer Standards and Training) certified in 1997. (Basic Certificate, attached as Exhibit 3; South Salt Lake Personal History Statement, pg 25, attached as Exhibit 1).

10.     Burnham signed the South Salt Lake Truthful Response Certificate, certifying under threat of prosecution under Utah law, that the information he provided to South Salt Lake was accurate.  (South Salt Lake Personal History Statement, pg. 27, attached as Exhibit 1).

**South Salt Lake's Pre-employment Evaluations**

11. South Salt Lake conducted a background check verifying Burnham's lack of criminal history, jail bookings, criminal charges, and criminal involvement. This background check also included interviews verifying Burnham's lack of any disciplinary history or complaints while a police officer for Tremonton. Burnham received positive reports from ecclesiastical leaders and neighbors. Burnham also passed drug tests. (Background Investigation, attached as Exhibit 4; Kenneth Wallentine Report, pg. 12, attached as Exhibit 5).

12. As part of South Salt Lake's pre-employment screening, Burnham underwent a Suitability Assessment performed by Associated Behavior Consultants, Inc. (Report of Suitability Assessment, attached as Exhibit 6).

13. During the suitability assessment, Burnham denied any sexual activity prior to his marriage at age 25. He further denied ever having been in trouble because of his sexual behavior. He denied ever regretting any of his sexual behavior. (Report of Suitability Assessment, pg. 2, attached as Exhibit 6).

14. Burnham was not truthful with South Salt Lake as to his sexual past. During his deposition, Burnham admitted to becoming sexually active in his teens and to fathering a child at age 16. (Deposition of Gary Burnham, 63:19-65:5, 67:5-8, Vol. II. 22:7-23, attached as Exhibit 2).

15. The Report of Suitability Assessment found that Burnham's "social judgment was good," that he held "traditional values," that he "appears sympathetic toward others," that he "shows a favorable attitude toward authority with no antisocial character traits," and that

he "is responsible, socialized to the rules of society and basically controlling of himself." (Report of Suitability Assessment, pg. 2, attached as Exhibit 6).

16.     The Report of Suitability Assessment concluded that Burnham was "a low risk" in the area of self-control, as well as in the area of social presentation. (Report of Suitability Assessment, pg. 3, attached as Exhibit 6).

17.     In August 1999, after approximately four months of applications, testing, screening interviews and background investigations, Burnham was hired as a police officer by South Salt Lake. (Application for Employment, attached as Exhibit 7; Employee's Personnel Record, attached as Exhibit 8; Kenneth Wallentine Report, pg. 8, attached as Exhibit 5).

18.     When hired by South Salt Lake, Burnham was a police officer in good standing with Tremonton City. (Deposition of Gary Burnham, 59:1-9; Background Investigation, attached as Exhibit 2; Kenneth Wallentine Report, pg. 11, attached as Exhibit 5).

**Burnham's History as South Salt Lake Police Officer**

19.     Once hired, South Salt Lake required that Burnham complete a 1 year probationary period before he would be made a merit employee. Burnahm successfully completed the one year probationary period on August 16, 2000. (Affidavit of Chief Chris Snyder, attached as Exhibit 9; October 27, 2000 letter attached as Exhibit 10).

20.     While employed by South Salt Lake, Burnham was awarded a Medal of Merit, and received 10 commendations. (Medal of Merit and Commendations attached as Exhibit 11; Kenneth Wallentine Report, pg. 8, attached as Exhibit 5).

21.     While employed by South Salt Lake, and prior to the incident with Plaintiff, Burnham received a few reprimands, which were limited to missed court and hearing appearances,

and speeding. (Supervisor's Activity Reports, attached as Exhibit 12; Kenneth Wallentine Report, pg. 8, attached as Exhibit 5).

22.     While employed by South Salt Lake, and prior to the incident with Plaintiff, six unsubstantiated complaints were made against Burnham. Plaintiff contends three of these complaints provided notice to South Salt Lake of problems with Burnham. These complaints included one for excessive use force; a December 2002 complaint filed by his first wife; and a December 2003 complaint filed by his second wife. (Unsubstantiated Supervisor's Activity Reports, attached as Exhibit 13; Kenneth Wallentine Report, pg. 15, attached as Exhibit 5).

23.     As to the excessive force complaint, Melody Ross and her brother David Fritz were arrested by Burnham and another officer. Ross alleged that the officers used excessive force on her brother. (Internal Affairs Final Case Disposition, attached as Exhibit 14; Kenneth Wallentine Report, pg. 19, attached as Exhibit 5).

24.     South Salt Lake investigated the complaint and interviewed witnesses, the officers, and Ross. South Salt Lake also reviewed the police reports and photographs. David Fritz did not file any complaint. The complaint was found to be unsubstantiated. (Internal Affairs Final Case Disposition, attached as Exhibit 14; Kenneth Wallentine Report, pg. 19-20, attached as Exhibit 5).

**2002 Complaint**

25.     Deann Burnham, Burnham's first wife, filed the second complaint at issue. Deann Burnham filed a report with the Tremonton City Police Department, the Clinton City Police Department, the South Salt Lake Police Department Internal Affairs, and Department of Family Services alleging domestic violence, sex abuse of a child and

violation of city policies. (Clinton Crime Report, DFS Child Abuse Neglect Report, attached as Exhibit 15; South Salt Lake Police Department Notice of Internal Investigation, attached as Exhibit 16).

26.     After receiving the December 2002 complaint, Tremonton City Police Department, the Box Elder County Attorney, the Clinton City Police Department and Davis County District Attorney, the South Salt Lake Police Department Internal Affairs, and Department of Family Services all conducted independent investigations into the complaint. None of these investigations found any evidence to substantiate the allegations in Deann Burnham's complaint. (Clinton Police Department Disposition, attached as Exhibit 17; DFS Assessment letter dated 12/27/02, attached as Exhibit 18; Davis County Declined Prosecution Statement, attached as Exhibit 19; South Salt Lake Internal Affairs Final Case Disposition, attached as Exhibit 20; Department of Public Safety (POST) letter dated 4/2/03, attached as Exhibit 21).

27.     Deann Burnham, Burnham's first wife, also sought a protective order against Burnham, in conjunction with their divorce. That action was dismissed by the Second District Court. (1/31/2003 Court Minutes, attached as Exhibit 22).

28.     Deann Burnham and Burnham entered into a settlement agreement whereby they agreed to joint custody of their children. The Second District Court awarded Burnham joint custody of his two children despite the prior allegations of the complaint Deann Burnham filed against Burnham with several government agencies. (Settlement Agreement and Findings of Fact and Conclusions of Law, attached as Exhibit 23).

29. POST conducted an investigation into Deann Burnham's December 2002 complaint againt Burnham. POST issued a "Notice of No Action" and closed its investigation. (Department of Public Safety (POST) letter dated 4/2/03, attached as Exhibit 21).

**2003 Complaint**

30. In December 2003, Burnham's second wife, Shannon Burnham, filed with the Salt Lake County Sheriff a complaint alleging domestic violence by Burnham. Burnham denied the complaint. (Burnham's Witness Statement dated 1/5/04, attached as Exhibit 24).

31. South Salt Lake Internal Affairs investigated the complaint and concluded that the evidence "could not prove or disprove the allegations." (Internal Affairs Final Case Disposition, attached as Exhibit 25).

32. Shannon Burnham was intoxicated at the time of the complaint, she related inconsistent facts to investigators, and she did not fully cooperate with the investigation. (Internal Affairs Final Case Disposition, attached as Exhibit 25; Kenneth Wallentine Report, pg. 18, attached as Exhibit 5).

33. On May 3, 2004, Burnham entered a plea in abeyance to disorderly conduct. He subsequently withdrew that plea and the court dismissed with prejudice the charges filed against him. (Order Granting Stipulated Motion to Vacate Conviction, Withdraw Plea, and Dismiss with Prejudice, attached as Exhibit 26).

34. Following the alleged December 2003 incident, Burnham completed the Men's Domestic Violence Group Therapy program as required by the Salt Lake County Justice Court. (Certificate of Completion, attached as Exhibit 27).

35. POST investigated the alleged December 2003 incident, and issued an "official Letter of Caution," warning that "any future violations of a similar nature will result in the

suspension or revocation of your peace officer certification." Department of Public Safety (POST) letter dated 1/25/05, attached as Exhibit 28).

36.    South Salt Lake Police Department sergeant, Keith Livingston, thereafter told Burnham to be really careful in his future conduct. (Deposition of Gary Burnham, 163:2-9, attached as Exhibit 2).

**South Salt Lake Policies and Rules**

37.    Section V(1) of the Personnel Policies and Procedures Manual for The City of South Salt Lake requires employees to "avoid[ ] . . . even the appearance of illegal or unethical conduct." (Personnel Policies and Procedures Manual for The City of South Salt Lake, pg. 22, attached as Exhibit 29).

38.    South Salt Lake's policy prohibits any "ride-alongs" in a police vehicle without approval from the Shift Sergeant, and a signed waiver of liability by the participant. (Instructions for Ride-Along Participants, and Waiver of Liability, attached as Exhibit 30; Deposition of Gary Burnham, 71:21-72:11, 129:23-130:10, attached as Exhibit 2).

39.    Burnham testified that he knew the ride-along procedures and previously followed those procedures. (Deposition of Gary Burnham, 71:21-72:11, 123:24-124:5, attached as Exhibit 2).

40.    The South Salt Lake Police Department's Professional Standards and Conduct Manual requires officers to "abide by the laws relating to the protection of civil liberties," prohibits the "willful or repeated violations of any rule, regulation, or policy of the department," prohibits "devoting on-duty time and attention to non-department business," prohibits "acting in a manner tending to bring discredit upon himself . . . or the department," prohibits use of position "for . . . personal . . . gain," prohibits the "willful[ ]

mistreatment . . . of any person," as well as other rules prohibiting the conduct complained of by Plaintiff. (South Salt Lake Police Department's Professional Standards and Conduct Manual, pgs. 5 - 9, attached as Exhibit 31).

41. The South Salt Lake Police Department's Professional Standards and Conduct Manual specifically prohibits "any sexual misconduct, particularly while on duty," as well as "criminal conduct," and "sexual harassment," which includes "unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature." (South Salt Lake Police Department's Professional Standards and Conduct Manual, pgs. 8, 14 attached as Exhibit 31).

42. The South Salt Lake Police Department's Professional Standards and Conduct Manual specifically requires that police equipment be used "only for its intended purpose," (South Salt Lake Police Department's Professional Standards and Conduct Manual, pg. 12, attached as Exhibit 31).

43. Burnham admits he was familiar with and had read the Salt Lake Police Department's Professional Standards and Conduct Manual. (Deposition of Gary Burnham, 69:12-19, generally, 69-75, attached as Exhibit 2; Burnham Evaluation Records, attached as Exhibit 32; Receipt of Policy document, attached as Exhibit 33).

44. Burnham participated in policy preview training including a discussion of the South Salt Lake Police Department's Professional Standards and Conduct in January and February 2003, and in January 2005. (Affidavit of Chief Chris Snyder with attached Burnham Summary Report, attached as Exhibit 9; Kenneth Wallentine Report, pg. 21, attached as Exhibit 5).

45. POST has adopted the Law Enforcement Code of Ethics. (Kenneth Wallentine Report, pg. 21, attached as Exhibit 5).

46. Burnham attended the POST First Line Supervisor Course in 2002, which included a discussion of the Law Enforcement Code of Ethics. (Affidavit of Chief Chris Snyder with attached Burnham Summary Report, attached as Exhibit 9; Kenneth Wallentine Report, pg. 21, attached as Exhibit 5).

47. No Utah cities, including South Salt Lake, subscribe to CALEA (Commission on Accreditation of Law Enforcement Agencies) accreditation. (Kenneth Wallentine Report, pg. 20, attached as Exhibit 5).

**Alleged Sexual Assault**

48. On July 2, 2005, at approximately 2:47 a.m., the Plaintiff and a friend, Sean Hadley, were drinking alcohol on the grounds of Granite High School when Burnham approached them and cited them for providing false personal information to a police officer, underage drinking, and drinking in a prohibited area. (Citations attached as Exhibit 34).

49. Burnham's portable breathalyzer measured the Plaintiff's blood-alcohol level at 0.194. (Citations attached as Exhibit 34; Deposition of Gary Burnham, 183:11-17, 185:1-4, attached as Exhibit 2).

50. Burnham told Plaintiff she could leave the area, and she did. A short time later, Burnham drove up alongside the Plaintiff and after some discussion, she entered Burnham's police car. (Internal Affairs Final Case Disposition, attached as Exhibit 35; Complaint, pars. 14-16; Deposition of Burnham 188-189, attached as Exhibit 2).

51. Burnham then took the Plaintiff to his apartment. (Internal Affairs Final Case Disposition, attached as Exhibit 35; Complaint, par. 19; Deposition of Burnham 188-190, attached as Exhibit 2).

52. At about 3:40 a.m., roughly one hour after picking up the Plaintiff and arriving at his apartment, Burnham contacted the South Salt Lake Shift Sergeant and checked off-duty. (Deposition of Gary Burnham, 195:5-17, attached as Exhibit 2; Internal Affairs Final Case Disposition, attached as Exhibit 35).

53. Burnham never reported, and South Salt Lake never knew, that he had transported the Plaintiff to his apartment in his police car. (Deposition of Gary Burnham, 196:18-20, 197:8-10, Vol II. 39:11-40:23, attached as Exhibit 2).

54. Burnham admits that taking the Plaintiff to his apartment violated South Salt Lake's policies and rules. (Deposition of Gary Burnham 202:5-24, 223:20-23, Vol II. 39:11-40:23, attached as Exhibit 2; Kenneth Wallentine Report, pg. 21, attached as Exhibit 5).

55. Burnham admits that there was no way for South Salt Lake to know beforehand that Burnham would violate policies or law in his conduct with Plaintiff. (Deposition of Gary Burnham, Vol. II. 40:6-11, 40:20-41:6, 49:19-25, attached as Exhibit 2).

56. Plaintiff alleges that Burnham sexually assaulted her at his apartment. (Complaint pars. 24-25).

57. Burnham claims the sexual contact was consensual; however Burnham knew that an intoxicated person cannot legally consent. (Deposition of Gary Burnham, 236:23-237:1, 245:19-246:1, attached as Exhibit 2).

58. At approximately 6:45 a.m. on July 2, 2005, Burnham drove the Plaintiff to a Maverick gas station. (Deposition of Gary Burnham, 239:6-23, attached as Exhibit 2).

59.     At approximately 5:45 p.m. that evening, Plaintiff went to the hospital, and received a sexual assault examination. (Sexual Assault Examination, attached as Exhibit 36).

**Post-Assault Events**

60.     The sexual assault was reported to the Salt Lake City Police Department at 4:37 p.m. on July 2, 2005.  (Salt Lake Police Department Report, attached as Exhibit 37).

61.     That same day, the South Salt Lake Police Department placed Burnham on administrative leave pending an investigation.  (7/2/05 Letter, attached as Exhibit 38; Deposition of Gary Burnham, 216:4-217:20; South Salt Lake email notice, attached as Exhibit 39).

62.     After being placed on administrative leave, Burnham never again worked as a police officer for South Salt Lake.  (Affidavit of Chief Chris Snyder, attached as Exhibit 9; Kenneth Wallentine Report, pg. 11, attached as Exhibit 5).

63.     On July 2, 2005, within hours of the reported sexual assault, and after Burnham had already been put on administrative leave, the Salt Lake County District Attorney Criminal Investigations Unit interviewed Burnham.  Burnham denied any sexual contact with the Plaintiff. (7/2/05 Transcript, attached as Exhibit 40; Deposition of Gary Burnham, 216:4-217:20, attached as Exhibit 2).

64.     Burnham thereafter took a polygraph test, which indicated deception. (Polygraph results attached as Exhibit 41).

65.     On July 18, 2005, the Salt Lake County District Attorney Criminal Investigations Unit interviewed Burnham a second time.  Burnham again denied any sexual contact with the Plaintiff. (7/18/05 Transcript attached as Exhibit 42).

66. Burnham was not truthful during the initial investigation. (Deposition of Gary Burnham, 123:1-11, attached as Exhibit 2).

67. On July 20, 2005, Burnham contacted the Salt Lake County District Attorney Criminal Investigations Unit and revised his earlier statements to admit consensual sexual contact with the Plaintiff. (7/20/05 Transcript and Notes attached as Exhibit 43).

68. On August 26, 2005, Burnham resigned as a police officer of the South Salt Lake Police Department. (Resignation letter, attached as Exhibit 44).

69. On August 31, 2005, Internal Affairs completed its investigation finding "insufficient evidence to prove that Officer Burnham sexually assaulted [the Plaintiff]." (8/31/05 Letter attached as Exhibit 45).

70. Internal Affairs did find that Burnham violated policy by giving "a ride to an intoxicated female that he had just arrested while he was still on duty with the intention of taking her to his residence," by lying to investigators, by not operating the dashboard camera during the initial stop, and by "demonstrat[ing] a general disregard for proper police conduct. . . abus[ing] his authority and the tools that are provided to him for the performance of his official duties. . . [and for] blatant disregard for the mission and reputation of the South Salt Lake Police Department." (Internal Affairs Final Case Disposition, attached as Exhibit 35; Professional Standards and Conduct Manual, section 1.35, attached as Exhibit 31).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Rule 56(c). The Utah Supreme Court has expanded on this stating that summary judgment is not precluded simply whenever some fact remains in dispute, but only when a material fact is genuinely controverted. <u>Hegler Branch, Inc. v. Stillman</u>, 619 P.2d 1390 (Utah 1980).

Additionally, Utah courts have made clear that specific facts are needed to oppose summary judgment. <u>Reagan Outdoor adv. Inc. v. Lundgren</u>, 692 P.2d 776 (Utah 1984); <u>Treloggan v. Treloggan</u>, 699 P.2d 747 (Utah 1985). An affidavit or verified complaint that merely reflects the affidavit's unsubstantiated conclusions and then fails to state evidentiary facts is insufficient to create an issue of fact. <u>Walker v. Rocky Mt. Recreation Corp.</u>, 508 P.2d 538 (Utah 1973); <u>Williams v. Melba</u>, 699 P.2d 723 (Utah 1985); see also <u>Pentecost v. Harward</u>, 699 P.2d 696 (Utah 1985). Similarly, bare assertions of negligence, unsupported by any facts, fall short of raising any material issue of fact on the issue of negligence. <u>Massey v. Utah Power & Light</u>, 609 P.2d 937 (Utah 1980).

Of particular importance in this case, the 10th Circuit has explained that "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment in favor of the moving party is proper." <u>J.B. v. Washington County[II]</u>, 127 F.3d 919, 923 (10th Cir. 1997). In the trial court proceeding, Judge Green explained that the "relevant inquiry is 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>J.B. v. Washington County</u>, 905 F.Supp. 979 (Dist. Utah 1995). Mere dispute "over the relative significance of various facts" will not prevent summary judgment. <u>Id</u>. Because the material facts are not in dispute, but only their significance, summary judgment is proper.

<u>**ARGUMENT**</u>

I.     **SUMMARY JUDGMENT IN FAVOR OF SOUTH SALT LAKE IS WARRANTED BECAUSE SOUTH SALT LAKE DID NOT HAVE A POLICY ALLOWING SEXUAL ABUSE BY OFFICERS AND SOUTH SALT LAKE WAS NEITHER A DELIBERATE ACTOR NOR A MOVING FORCE BEHIND BURNHAM'S CONDUCT.**

In <u>Board of County Commissioners v. Brown</u>, 520 U.S. 397 (1997), the Supreme Court of the United States set forth the standards that must be met by a plaintiff to impose liability against a municipality. In <u>Brown</u>, the plaintiff brought a claim under 42 U.S.C. § 1983 that a police officer used excessive force in an arrest. <u>Id</u>., at 399-400. As here, the Plaintiff alleged that the county was liable for the acts of the officer because of the county's "hiring and training" decisions. <u>Id</u>., at 400. The Supreme Court overturned a judgment against the county because "Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." <u>Id</u>. (Emphasis in original).

A.     **Plaintiff Must Show That South Salt Lake Had A Policy Or Custom Allowing Sexual Abuse.**

The Supreme Court stated that "we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Id</u>., at 403. By requiring such a "policy," it is "ensure[d] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." <u>Id</u>., at 403-404 This requirement therefore prevents a municipality from being liable simply because it is an employer. <u>Id</u>., at 404.

**B.    Plaintiff Must Show That South Salt Lake's Was A Deliberate Actor And The Moving Force Behind The Alleged Assault.**

In addition to identifying a "policy" attributable to the municipality, the "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Id. (Emphasis in original).  This means that the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

**i.    Mere negligence or heightened negligence is not sufficient to meet the rigorous standard of culpability and causation. Deliberate indifference must be shown.**

Where an *illegal* policy exists, such as a policy directing officers to sexually abuse those that are arrested, the required "culpability" of the municipality (i.e., the policy maker) is established. Id., at 404-405.  However, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id., at 405.

There is no dispute that South Salt Lake lacks an illegal policy allowing the sexual abuse of those arrested.  Rather, Plaintiff, as set forth in the complaint, alleges that South Salt Lake *indirectly* inflicted the Plaintiff's injury by its alleged failure to "instruct, supervise, control and/or discipline Officer Burnham." (Complaint pars. 34, 46).  Plaintiff, therefore, must meet the "rigorous standards of culpability and causation" set by the Supreme Court in Brown.  As the Supreme Court explained, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation." Id., at 406. In such circumstance, "a showing of simple or even heightened

negligence will not suffice."[1] Id., at 407.  Instead, the Plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Id.

> **ii.** <u>If Plaintiff's claims are based upon inadequate training, a pattern of sexual misconduct must be shown to meet the deliberate indifference standard.</u>

Such a showing of "deliberate indifference" may be based upon "inadequate training," The Supreme Court has indicated that this standard may be met by showing that "the police . . . so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." Id.  A municipality's "continued adherence to . . . [training] that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." Id.  There must be a showing of a "high degree of predictability" that the injury would result from the lack of training. Id., at 409-410.  The Plaintiff fails to meet this burden, as explained in Section III below.

> **iii.** <u>If Plaintiff's claims are based upon improper screening, a direct, highly likely connection must be made between the applicant's background and the particular injury.</u>

A showing of "deliberate indifference" may also be based upon an improper screening prior to hiring.  However, in such improper screening claims, mere "indifference to the applicant's background . . . is not the relevant indifference." Rather,

---

[1]Any liability of South Salt Lake must be based on "deliberate indifference."  It cannot be based upon mere negligence.  The negligence cause of action against South Salt Lake must, therefore, fail.

A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

Id., at 411.

Further, "culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Id., at 412. The Plaintiff fails to meet this burden, as shown in Section III below.

## II.   THIS COURT MAY RESOLVE AS A MATTER OF LAW PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS AGAINST SOUTH SALT LAKE.

The Federal Court for the District of Utah addressed similar issues on summary judgment in J.B. v. Washington County, 905 F.Supp. 979 (Dist. Utah 1995). In that case, the plaintiff sued the county alleging 42 U.S.C. § 1983 violations. The court recognized Rule 56's summary judgment standard, and held that "[w]hile there is some dispute over the relative significance of various facts, this court determines that it can appropriately rule as a matter of law, because there is no genuine issue of material fact." Id., at 984. The same is true here. While Plaintiff and Defendants may dispute whether the facts are sufficient to meet the necessary culpability and causation requirements, the parties do not dispute the facts upon which such sufficiency may be determined. Because the material facts are not in dispute, the court may make a determination as a matter of law on summary judgment.

### III. THERE IS NO EVIDENCE OF DELIBERATE INDIFFERENCE IN SOUTH SALT LAKE'S HIRING OR TRAINING POLICIES AND PROCEDURES.

Plaintiff has not produced any evidence that South Salt Lake's hiring or training policies allowed its police officers to sexually assault individuals. In <u>Barney v. Pulsipher</u>, 143 F.3d 1299 (10th Cir. 1998), the Tenth Circuit re-iterated the principles and requirements set forth in <u>Brown</u>. In <u>Barney</u>, both Barney and Christensen were sexually assaulted by an officer at the county jail in Utah. The victims sued the county, alleging that the county failed to screen, supervise and train the officers at the jail which led to the assault. As in the case at bar, there was no evidence of an illegal policy allowing the sexual assault of those in custody. Therefore, the issue in <u>Barney</u>, as here, was whether the "hiring and training" of the officer resulted in liability for the municipality. <u>Id</u>., at 1307. These two bases for imposing liability – hiring and training, both of which were discussed in <u>Brown</u>, were expanded upon in <u>Barney</u>. In both <u>Brown</u> and <u>Barney</u>, to impose liability against the municipality for improper screening or inadequate training, the plaintiff must show that the failure "reflect[s] a 'deliberate' or 'conscious' choice by the municipality." <u>Id</u>. If the Plaintiff fails to provide evidence showing such deliberate indifference, summary judgment is appropriate. <u>See Brown</u> and <u>Barney</u>.

### A. Plaintiff Cannot Show A Pattern Of Violations Indicating Inadequate Training and "Deliberate Indifference."

In helping determine whether there is a "deliberate" or "conscious" choice regarding inadequate training, the 10th Circuit explained that one must determine whether "the municipality ha[d] actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." <u>Id</u>., at 1308. The 10th Circuit emphasized that it is only in a "'narrow range of

circumstances' [that] deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." <u>Id</u>., at 1307-1308.

> **i.** <u>There is no evidence of a pattern of violations. Even if there were, it was not the result of inadequate training by or deliberate indifference of South Salt Lake .</u>

In <u>Barney</u>, the 10th Circuit determined that there was no evidence of a pattern of violations, and therefore, no deliberate indifference. <u>Id</u>., at 1308. In this case, there is likewise no evidence of a pattern of sexual assault violations. Furthermore, even if a pattern of sexual assaults existed, such violations are not a result of inadequate training. As the 10th Circuit explained:

> [W]e are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior. ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.")

<u>Id</u>. It is undisputed that under the facts of this case, inadequate training was not the cause of the alleged sexual assault of the Plaintiff. Indeed the undisputed facts establish that Burnham was properly and extensively trained, and that he had a commendable record as a police officer.

> **ii.** <u>There is no evidence that South Salt Lake's police training was constitutionally deficient.</u>

The 10th Circuit also stated that the <u>Barney</u> case "does not fall within the narrow range of circumstances justifying a finding of deliberate indifference absent a pattern of violations." <u>Id</u> The 10th Circuit made this determination based upon the facts that the officer had

completed a state certified basic peace officer training program and a correctional officer course after he was hired, which included instruction on offenders' rights, staff/inmate relations, sexual harassment, and cross-gender search and supervision. Plaintiff's have not come forward with evidence pertaining to the adequacy of the instruction he received in these courses. We thus have no reason to conclude that [the officer] received constitutionally deficient training.

Id.

Just as the officer in Barney, Burnham had received training regarding the South Salt Lake Police Department's Professional Standards and Conduct a few months prior to the alleged sexual assault. (Undisputed Fact #44). He had received additional training regarding the same standards of conduct in January and February 2003. (Undisputed Fact #44). Burnham was also POST certified, and had attended the POST First Line Supervisor Course in 2002, which included a discussion of the Law Enforcement Code of Ethics. (Undisputed Facts #45-46). Furthermore, he had received and was familiar with the South Salt Lake Police Department's Professional Standards and Conduct manual. (Undisputed Fact #43). He was specifically familiar with the ride-along rules, as well as the rules regarding the allowable use of police cars. (Undisputed Facts #38-39). Moreover, Burnham was familiar with Utah law regarding the ability of the Plaintiff to consent while intoxicated, as well as sexual assault laws. (Undisputed Fact #57).

Under such undisputed facts, there is "no reason to conclude that [Burnham] received constitutionally deficient training." Barney, at 1308. Again, even if the training had been deficient, the sexual assault of the Plaintiff was not the "plainly obvious consequence of a deficient training," considering the fact that "[s]pecific or extensive training hardly seems necessary for a [police officer] to know that sexually assault[ ] . . . is inappropriate behavior." Id.

South Salt Lake need not provide specific training to inform a police officer that sexually assaulting young women is inappropriate.  See Id.

Consequently, as in Barney, the Plaintiff must show a pattern of violations, in addition to finding "deliberate indifference."

### B.    Plaintiff Cannot Show A Pattern Of Violations Indicating Improper Screening by South Salt Lake to Support a Claim of "Deliberate Indifference."

Lacking a basis for their claim in inadequate training, the Plaintiff must show that South Salt Lake improperly screened Burnham before hiring him.  The 10th Circuit quoted the Supreme Court, warning that such claims must be carefully scrutinized because such a claim

> poses the "greatest risk" that a municipality will be held liable for the actions of its employees rather than its own actions, since every injury inflicted by a municipal employee can be traced to hiring in a but-for sense. (Citation omitted). The [Supreme] Court therefore held that when reviewing hiring decisions, courts must take even greater care to adhere to stringent culpability and causation standards (citation omitted), and carefully "test the link" between the policymaker's hiring decision and the particular injury alleged.

Barney, at 1308 (quoting Brown, at 1391, 1394).

The 10th Circuit has explained that "[m]erely showing that a municipal officer engaged in less that careful scrutiny of an applicant resulting in a generalized risk of harm is not enough to meet the rigorous requirements of 'deliberate indifference.' (Citation omitted).  Culpability requires a strong connection between the background of the particular applicant and the specific constitutional violation alleged. . . . [It] requires a finding that '*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.'" Barney, at 1308 (emphasis in original)(quoting Brown, at 1392).

**I.** **There is no evidence demonstrating that prior to being hired, Burnham was "highly likely" to sexually assault Plaintiff.**

At the time he was hired, Burnham was in good standing with his previous employer, Tremonton Police Department. (Undisputed Fact #18). Burnham had no criminal history, jail bookings, criminal charges, or criminal involvement prior to being hired. (Undisputed Fact #11). Burnham received positive reports from his former employers, neighbors, and ecclesiastical leaders prior to being hired. (Undisputed Fact #11). Burnham underwent a Suitability Assessment performed by Associated Behavior Consultants, Inc., which found Burnham to be "a low risk" in the area of self-control, as well as in the area of social presentation. (Undisputed Facts #12, 15, 16). Further, Burnham was already POST certified when he was hired. (Undisputed Fact #9). There is no evidence to show that prior to being hired by South Salt Lake, Burnham was "highly likely" to sexually assault the Plaintiff.

**ii.** **There is no evidence showing that after being hired, Burnham was "highly likely" to sexually assault Plaintiff.**

Even after being hired, there was no evidence presented that would make the sexual abuse of the Plaintiff "highly likely." The excessive force complaint made by Melody Ross was fully investigated and completely unsubstantiated. (Undisputed Facts #23-24). Furthermore, it had nothing to do with sexual assault, and therefore, cannot be considered to make sexual assault "highly likely." "Culpability . . . requires a finding that '*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.'" Barney, at 1308 (emphasis in original)(quoting Brown, at 1392). No such showing can be made based upon the unsubstantiated excessive force complaint.

The December 2002 allegations made by Deann Burnham during her divorce from Burnham, were likewise unsubstantiated. These allegations, including allegations of child

sexual abuse, were investigated by the Tremonton City Police Department, the Box Elder County Attorney, the Clinton City Police Department and Davis County District Attorney, the South Salt Lake Police Department Internal Affairs, and Department of Family Services, and nothing to support the allegations was found. (Undisputed Fact #26). Even after Deann Burnham made the allegations against Defendant, Burnham, she entered a settlement agreement with her husband agreeing to joint custody of the children allegedly sexually abused. (Undisputed Fact #28). The protective order initially sought by Deann Burnham was dismissed by the Second District Court. (Undisputed Fact #27). POST also conducted an investigation into the December 2002 complaint and issued a "Notice of No Action," closing the investigation. (Undisputed Fact #29). A mere complaint, investigated by numerous agencies and found to be unsubstantiated, is insufficient to show that Burnham was "highly likely" to take the Plaintiff to his apartment and sexually abuse her.

The December 2003 complaint, filed by Burnham's second wife, Shannon Burnham, alleges domestic abuse. The matter was fully investigated by both South Salt Lake and POST. (Undisputed Facts #31, 35). Shannon Burnham was intoxicated at the time she made the complaint, and related inconsistent facts in her complaint. (Undisputed Fact #32). A disorderly conduct charge was eventually dismissed with prejudice. (Undisputed Fact #33). However, even if the disorderly conduct charge had not been dismissed, and even if the domestic abuse charge had been substantiated, such charges do not make Burnham's alleged sexual abuse of Plaintiff "highly likely." See Barney, at 1308.

In Barney, the plaintiff provided evidence of defendant's traffic violations, and charges of assault and battery, resisting arrest, and public drunkenness; however the trial court nevertheless granted summary judgment for the county. The court should do likewise here. The

court has the authority, and obligation, under Rule 56, to determine whether the undisputed facts are sufficient for the Plaintiff to meet the deliberate indifference burden. The issue before the court is not a question of fact. The facts are undisputed. The issue is a question of law, and it should be resolved on summary judgment.

## IV. PLAINTIFF'S STATE CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED.

The Plaintiff has alleged violations of Article 1 Sections 7 (due process), 9 (cruel and unusual punishment), 14 (unreasonable search and seizure), and 21 (slavery). All these claims should be dismissed.

### A. No Private Cause Of Action Exists.

The Plaintiff's state constitutional claims should be dismissed because there is "no direct statutory or common law private cause of action for violation of provisions of the Utah State Constitution which are not self executing." Washington County, at fn. 16 (citing Condemarin v. University Hospital, 775 P.2d 346 (Utah 1989), J. Hall's dissent, noting that no private cause of action under the Utah Constitution appears to exist since no remedy is provided). As Judge Green held in Washington County, "[u]ntil and unless the Supreme Court of Utah rules otherwise, this court rules that plaintiffs' direct claims under the Utah Constitution may not be asserted under Utah law." Washington County, at fn. 16. Therefore, the non-self-executing provisions of the Utah Constitution, including Article 1, Sections 7, 9, 14, and 21, should be dismissed.

### B. South Salt Lake Is Immune.

The Utah Constitution claims fail for the additional reason that South Salt Lake has immunity under the Utah Governmental Immunity Act. Under UCA § 63-30d-201, "[e]xcept as

may be otherwise provided in this chapter, each governmental entity . . . are immune from suit for any injury which results from the exercise of a governmental function. . . ." As the court in Washington County held, the Governmental Immunity Act

> does not provide for waiver of immunity for claims based on the due process or equal protection clauses of the Utah Constitution as against political subdivisions of the state. A "political subdivision" is defined as any county, city, town, . . . Utah Code Ann. § [63-30d-102(7)]. It follows that Defendant [South Salt Lake] is immune from plaintiff's damages claims under the Utah Constitution.

Id. In addition to not waiving immunity for claims based on the due process and equal protection clauses, Utah has not waived immunity on Article 1, sections 9, 14, or 21. Therefore, all of the Plaintiff's Utah Constitutional claims should be dismissed.

### C. Plaintiff's State Constitutional Claims Fail For The Same Reasons Her Federal Constitution Claims Fail.

Even if the Utah Constitutional claims survived Sections IV(A) and (B) above, the claims nonetheless fail for the same reason the Federal Constitutional claims fail, as set forth in Sections I - III above. The language in the Utah Constitutional provisions are similarly worded to the Federal Constitution. The federal case law cited herein is persuasive as to the Utah Constitutional claims. See Washington County, at 992; Based upon that case law, the Utah Constitutional claims should be dismissed along with the Federal Constitutional claims.

### CONCLUSION

Plaintiff has failed to show sufficient facts upon which liability can be imposed against South Salt Lake. Plaintiff has failed to show that South Salt Lake acted with deliberate indifference. Specifically, Plaintiff cannot show that South Salt Lake had an illegal policy authorizing sexual abuse. Plaintiff cannot show that South Salt Lake's training or hiring was inadequate. Further, even if Plaintiff could produce evidence faulting South Salt Lake's training

-13-

or hiring procedures and policies, Plaintiff cannot show that her alleged sexual assault was "highly likely" result of inadequate training or hiring. Burnham knew, after all, that his acts were, at the very least, highly improper. Under 42 U.S.C. § 1983, Plaintiff must do more than make allegations or simply rely on unsubstantiated prior complaints against Burnham. Plaintiff must actually show "deliberate indifference" to survive summary judgment. Plaintiff has not met her burden, and the Court should enter summary judgment in favor of South Salt Lake.

Plaintiff's Utah Constitutional claims should be dismissed for the same reasons the Federal Constitutional and negligence claims fail. In addition, the Utah Constitutional claims should fail because there is no recognized private cause of action. Further, government immunity protects South Salt Lake. Because all Plaintiff's causes of action against South Salt Lake fail, Plaintiff's claim for attorneys fees likewise fails.

DATED this 3rd day of July, 2008.

**PLANT, CHRISTENSEN AND KANELL**


　　_/s/ H. Justin Hitt (UBN 8762) for_　　　　
TERRY M. PLANT
JOHN H. ROMNEY
Attorneys for Defendant City of South Salt Lake

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alan W. Mortensen
Dewsnup, King & Olsen
2020 Beneficial Life Tower
26 South State Street
Salt Lake City, UT 84111
Attorney for Plaintiff

Jerrald D. Conder
8 East Broadway, Suite 500
Salt Lake City, Utah 84111

_/s/ H. Justin Hitt_____